We have three argued cases this morning. The first one is number 242161, Anklam v. HHS. Mr. Webb. Thank you. I want to thank the court for the accommodations they've made for my difficulty hearing. The captioning device helps a great deal, but I depend on both hearing, and I have a specialized microphone here, and the captioning device, and I will try my very best to hear and respond to your questions. And may it please the court. I want to begin with the question of whether the Court of Federal Claims judge abused his discretion when he denied the Anklam's motion to remand their case to the special masters to consider the Gould article. That's the final, the fourth section of my brief. The Gould article is video analysis of unexplained deaths in toddlers. It establishes that febrile seizures can cause some cases. Let me say that again. The Gould article establishes that febrile seizures cause some cases of sudden unexplained death in childhood. Was there not other evidence already in the record on that theory that seizures, there is a correlation between seizures and SIDS? There was a great deal of evidence on that issue before. None quite so strong as the Gould article. What do you mean so strong? What was the strength of the Gould article? It describes actual observation of seizures that occurred immediately before the death in six children that died of deaths classified as sudden unexplained death in childhood. So the evidence in the record before the special master included medical literature that in the authors concluded that seizures probably cause some cases of sudden unexplained death in childhood. Counsel? That the seizures themselves had not been observed. Counsel, do you agree at least that the Gould article does not provide specific evidence on whether N.A. specifically suffered a seizure leading to her death? I'm trying to make sure I answer that correctly because I believe it does provide evidence that N.A. suffered a seizure and let me explain that. It provides context. I believe that the evidence that her death was classified as a sudden unexplained death in childhood and the fact that seizures, that the Gould article provides strong evidence that sudden unexplained death in childhood is strongly associated with seizures means that it's like if you had a man You're saying it's evidence that she suffered a seizure because she had suffered an unexplained death? I'm sorry, that again, please? You're saying that the fact that there was an unexplained death is itself evidence that a seizure occurred? That's exactly correct. I'm trying to say I think it's this. If a man is found dead in an open pasture and you're trying to ask the question, what caused that man's death? It matters that he was found in that pasture immediately after a thunderstorm. That makes it much more likely that he was struck by lightning than if you didn't know that. The children at the age of Nora and Clem, 12 months or older, are able to turn side away or roll over if they have respiratory problems. So there's a real reason to believe that something caused the child to die that night. And the cause that has been identified in cases classified as sudden unexplained death in childhood has been febrile seizures. So I think that the context of her death, both in terms of her death being SUDC and in the context of it being seven days after a MMRV vaccine that causes seizures, there's strong evidence. It provides evidence and inference that she had a seizure. So at least you just used the word inference, so I think it sounds like you do agree it's not direct evidence. You may still be arguing it's indirect evidence to support your theory? I'm talking about the Gould article. I think that in terms of that she had seizure, it was, I think that the Gould article provides direct evidence on the question of whether febrile seizures can cause or do cause some cases of SUDC. The evidence that she suffered a seizure from the Gould article is indirect evidence because it provides context which provides an inference that the seizure occurred. But did the case that existed before the special master, in your view, did that turn on whether or not there was a correlation between seizures and SUDC? There's no evidence of causation, but that wasn't disputed by the government, right? That seizures, there is or is not some correlation between seizures and SUDC? I'm sorry, sometimes I need to read the caption in as well as here. I don't want to speak for the government about what they conceded or agreed to. I do not think that there was. Did this case turn on whether or not there was any correlation between seizures and SUDC? Because that's not the way I understood. I think the case turns on two things. First, was there a preponderance of evidence that N.A. suffered a seizure that night? But I do think that the question of whether there's a correlation between seizures and SUDC is an important part of our medical theory. And so that case also turned on. And it was rejected by the special master, right? The special master found that you hadn't proved there was a connection between seizures and death. That's correct. And that's another reason why the Court of Federal Claims judge erred when he denied the special master an opportunity to consider the Gould article, because the Gould article provides direct evidence that seizures cause SUDC deaths. They observed on videotapes both the seizures in these children and the respiratory distress that follows seizures, the sudden unexplained death and epilepsy-like mechanism through which seizures cause death in children with epilepsy and which has been hypothesized to cause death in children with SUDC. And for the first time, the Gould article describes the actual observation of both the seizures and the respiratory difficulties caused by the seizures. And so it is very important evidence on the question of whether seizures can cause death. Well, I guess I don't see how whether or not seizures can cause SUDC is dispositive or directly relevant to any of the bases upon which the special master relied in her. I mean, the Gould article doesn't, there's no statistical, there's no like 95 percent of SUDC cases are caused by seizures. There's nothing about the numbers, right, in the Gould article. It's just instances of the fact that seizures can cause SUDC. Anything beyond that that you can take away from that article? And I don't know that I understood that it was disputed that below, that the case turned on whether or not seizures could, could cause SUDC. I wish I felt that way, but I think the government did dispute whether febrile seizures could cause death in a child that didn't have a history of seizures or some other neurologic disorder. And I think the special master concluded that that was what she thought the difficult question was. I may have had more difficulty proving that point than I would have liked, because it seems so obvious to me that seizures can cause death. They did concede that seizures can cause death in the context of a complex or prolonged seizure. But those are less common than what are sometimes called simple febrile seizures, which are brief. But the issue here was whether or not N.A. had a seizure at all. And so, this doesn't answer, go to that question, does it? Or are you starting backwards and saying because sometimes seizures can cause SUD, then that proves that she had a seizure as a result of her vaccine? Is that the theory? Sorry, it's a convoluted question. Yeah, I understand. I think I understand the question. And that is, what I'm trying to explain is that... You're saying that unexplained death is evidence of a seizure, right? That's the theory. Yes, that's the theory. And what I'm saying is that the doctors that have studied the question of whether seizures cause SUDC, they looked for, in the record before the special master, was based on some kind of proxy for the observation of the seizure. One of the proxies had been the anomalies in the hippocampus. The other proxies had been family or personal history of seizures. And the Gould article doesn't have to depend upon a proxy. It's actual observation of seizures and SUDC deaths. And these were the authors of the Gould article reviewed seven videos of the last sleep period of children who died SUDC deaths. These seven videos were all of the videos, usable videos, available from 301 cases of SUDCs studied by the New York University SUDC Research and Registry. So Registry and Research Collaborative. And so it's not like it's a sample of seven. It's really a sample of 301. And these were the cases that had that critical, valuable evidence of an actual video. It was part of those, it was one of those 301. But they didn't have a video. We probably wouldn't be here if they had a video of this last sleep period. So basically this group, the SUDC Research and Registry Collaborative, is one of the premier groups studying the question of whether vaccines cause, excuse me, whether seizures cause SUDC. And they looked at this video. What I'm saying is that it is now, based on the Gould article, there's very little question in my mind that that changes the whole landscape of the question of whether seizures cause death and whether seizures cause SUDC death. And with the observation reported in the Gould article, that's I would say not an open question anymore. But it's overwhelmingly proven that seizures occur in SUDC deaths. And that's different. What's your best evidence, though, that N.A. specifically suffered a seizure? Well, the evidence includes the family history. Her brother had seizures, febrile seizures. And under circumstances somewhat similar to N.A.'s in that he had, oops, I'm running out of time. I haven't been very good about that. Anyway, so the family history. She had a fever or an elevated temperature the night before when she went to bed. The circumstances of her death were somewhat similar to her brother's seizure in that she was warm because she was given Motrin and then she died that night. Her brother's seizure, he was warm. You're also relying on the government's concession that this vaccine can cause seizures, right? Oh, absolutely. This vaccine causes seizures. And it's important to note that seven to ten days is the time period in which you would expect a vaccine-caused seizure. So deaths that are associated with seizures at this critical time period is good evidence that there were seizures in her case. And I apologize for going over my time. Okay, we'll give you two minutes to rebuttal. Mr. Sachs? Thank you, Your Honor. May it please the Court? Let me tell you where I think we are. If I understand the special master decision, it rests on two conclusions. One, insufficient evidence that the child suffered a seizure. And two, insufficient evidence that seizures can cause death. And I think the Gould article is powerful evidence on the second question. It's more tenuous on the first question as to whether she actually suffered a seizure. But I wonder, given the special master's familiarity with the record, whether a remand under these circumstances is appropriate to let the special master reach a decision as to whether the Gould article is significant and should result in reopening the record. So could you address that question? Sure, Your Honor. Well, of course, Judge Brubin had the option to remand. But remand is permissive. It's not mandatory. The special master was divested of jurisdiction when petitioners filed the motion for review. They filed the motion before the Court of Federal Claims. So why not let the special master make the decision as to whether the Gould article has significance on the question of whether she suffered a seizure or not, rather than the Court of Federal Claims, who's less familiar with the record? Right. Well, the Court of Federal Claims applied the Van Erf test to whether or not it was sufficient to reopen and relied on the findings of the special master to make independent findings that go to causation or entitlement there. And, again, I've just stressed that remand is permissive. It's not mandatory. Judge Brubin is very well qualified to apply this Van Erf test. It was his case at the Court of Federal Claims. And, of course, this Court would review that determination to the abuse of discretion standard of review and whether it was a manifestly erroneous application of the Van Erf test to deny the motion. And we think that at the end of the day, as I think Your Honor was alluding to in the beginning, first and foremost, the Gould article is not outcome determinative or effective outcome. It doesn't speak to whether N.A. suffered a seizure the night of her death. His theory is that it does speak to that because it suggests that unexplained deaths are linked to seizures, and that suggests that since her death was unexplained that she had a seizure. It's a theory. I don't know how powerful it is, but it's a theory. Yes, and I think that goes to strengthening the inference that was discussed earlier. Potentially, that goes to the Alton one prong of causation of whether a seizure can be a cause of death in a SUDIC case. But that goes to, again, the theory of causation, and it doesn't go to the factual predicates of the case and of the causation analysis. This Court can affirm on the narrow basis of affirming the special master's finding that there is not preponderant evidence that N.A. suffered a seizure. But explain to me, because I'm forgetting the details of the special master's findings. Did at least a leg on the stool of her conclusions rest on the fact that there was not sufficient evidence to establish that seizures cause SUD? Yeah, well, I think that she went through the Alton analysis. Can you point me to where it is? Is it 49 and 50, or I couldn't find right? So at the beginning of the analysis, we're talking about the two factual predicates, and the primarily important one being whether or not there's preponderant evidence that N.A. suffered a seizure. That's beginning at appendix 49. After the factual analysis, the causation analysis begins at appendix 51. And, of course, without the factual predicates, the Alton one theory of causation necessarily fails. But the special master put that aside and gave independent reasons for why the theory in general doesn't meet the preponderance standard. And she has several independent factors for that, again, beginning at appendix 51. The finding was based on multiple grounds. The absence of clinical history or physical evidence of a seizure. The autopsy pathologist and the neuropathologist who was part of the SUDIC team did not find evidence of a seizure. It was agreed that it would be a low-grade fever at most and that insufficient to produce a seizure, as well as treated with antipyretics, Motrin, which would have been working at the time. And then the special master's rejection of both the petitioner's experts' opinions as either unsupported or outweighed by those from the government. Well, the fact that the vaccine causes seizures is some evidence that she had a seizure, right? Maybe not sufficient, but it's some evidence. Well, the theory of causation is that the MMRV caused a febrile seizure, a first-time fatal febrile seizure, and also in a vulnerable child. And that was part of the theory that was litigated below was that N.A. had brain abnormalities that predisposed her to seizures. Your stipulation wasn't limited to children with brain abnormalities. It was just a straight-out stipulation that this vaccine can cause seizures. It can cause febrile seizures, correct. But it was not stipulated that it could cause fatal febrile seizures, Your Honor. Well, is this – I'm looking at the first paragraph. I'm trying to find something that relates to whether this information was cumulative or what she did with the theory. The best I'm coming up with right now is the top of Appendix 53. She refers to Dr. Kinsberg, testified that unobserved seizures undoubtedly occur and can cause death. So this is talking about – because the Gould article is about seizures causing SUDC, not about the vaccine causing seizures. Correct. There's no mention of vaccines. And on that point, she said, as the medical literature aptly establishes, an increased risk of having a seizure when the likelihood is still very low does not – I'm not sure I can find exactly what she said about how much to the extent to which she relied on whether or not seizures can cause SUDC. In your recollection, did she accept Dr. Kinsberg's testimony that seizures can occur and can cause death? No. She accepted the concept that unobserved seizures can occur, but that would go, again, to the theory of causation. And we do think that the Gould article, while relevant, is cumulative of the evidence that was submitted in this case that's discussed at length in Special Master's decision that's submitted in support of the theory that one way in which a sudden explained death in child can occur is a seizure. That's what the Gould article purportedly shows. But it contradicts one of her grounds, right, which was that there wasn't sufficient evidence that seizures can cause death. I would respectfully not agree that it contradicts. I think it strengthens petitioners often when showing, but there are other factors of the overall theory of causation that it doesn't speak to. Again, a febrile seizure, there's no link to vaccines, the predisposed nature that was argued by petitioners' experts that N.A. had. So, again, it is relevant and it might help towards the theory of causation under Altham, but this court doesn't need to get there because it's not outcome determinative in the sense that it doesn't speak to the factual predicate that N.A. did not suffer a seizure. The study does not affect that outcome, and without that outcome, it does not need to reach the Altham causation process. But under the relevant test, it doesn't have to be outcome determinative, does it? I believe it does. Relevant and effective of outcome is the first feature. It's the paramount feature, and elsewhere in that decision in Van Erf, it is outcome determinative. My review of the special master's decisions that have applied this case in this test below supports that it is outcome determinative. It's a high bar, and we think that makes sense. There's importance in finality in these cases. This case has been litigated for years. There have been several rounds of expert reports from five experts, pre-hearing briefing, a multi-day hearing, now a lengthy over 50-page decision. And new evidence is the nature of this program in science in general. Studies come out all the time, and if we were to allow simply relevant studies. I understand that it would be a big deal to reopen the record and start having additional evidence about the significance of the Gould article and so on and so forth. But that doesn't seem to me to speak to the question of who should make the decision as to whether the record should be reopened, whether it should be the Court of Federal Claims making that decision or the special master who has the greater familiarity with the record. In other words, why not let the special master make a determination as to whether the Gould article has enough significance to warrant reopening the record? Well, again, I think that was an option, although I would say logistically, procedurally, I'm not sure how that would have worked. It might be messy with a pending motion for review and a separate motion for leave to file new evidence. What the judge would have done in terms of remanding that back. Pause the appeal and given the special master the authority to consider a motion to reopen the record based on the Gould article. Sure, but again, respectfully, I think this court just has to look at that decision that the Court of Federal Claims made from the abuse of discretion standard of review. And whether it was manifestly erroneous, whether Judge Brewer misunderstood and misapplied this Van Erf test that's been formulated for deciding these essentially motions to reopen the record. And we don't think that upon applying that standard of review that there was any error here. What would be the best part of the special master's decision that you would point to on the cumulative question that Judge Prost raised? Is there a certain part you'd point to that basically makes Gould cumulative of what was already in the record and considered by the special master? Well, Your Honor, I think that all of the articles that are discussed in the factual background section of this decision are submitted for the same purpose to support the theory that a federal seizure or a fatal seizure can be a cause of death in a SUDIC. In terms of the analysis, if you're asking me, I think we could look at the Appendix 53 into 54 and the petitioner's theory that relied in part on analogizing SUDIC, S-U-D-C, to SUDEP, S-U-D-E-P. And the literature there trying to make the connection between the pathophysiology which leads to fatal seizures in children with epilepsy and extrapolating that to SUDIC. Again, I think all the articles that are discussed in the decision prior, not in the analysis, but in the decision, all speak to the same offering of Gould. So Hefty and Kinney at Appendix 16 through Appendix 19. It's a long discussion of several articles, Kinney, Hefty, Kahn. All these articles that were submitted to support the inference that petitioners are asking the court to make. So I think it's This is the first time there was direct evidence that seizures could cause death, right? There's direct video evidence in the Gould article, yes. And again, the theory is a febrile seizure. I believe there were two cases of febrile seizure out of the six. And also, I'll point out that there are varying video qualities to these studies as well. And in the two cases of febrile seizures, there were confirmed concurrent illnesses that would explain the fevers. Okay, anything else? No, thank you. I would just say, because the special master's findings were thoroughly reasoned and not implausible, and the Court of Federal Claims correctly applied the law, the judgment should be affirmed. Thank you. Thank you. Mr. Webb, you have two minutes. I want to address first the question, who should decide whether this article was or could become determinative? I think it's clear that the special master's best suited for making that decision. And I think the case law doesn't tell us exactly how high the bar is about how important the evidence must be or should be before it should be admitted. I think the right standard should be whether it maybe could change the outcome or very likely to change the outcome. I don't think that's defined in the Van Erf test or any of the cases that have applied the Van Erf test. But in this compensation program, it is appropriate to consider all the available evidence. And I don't think anyone can argue that Gould isn't important evidence on the questions. Both the questions of whether there was a seizure and the question of whether seizures caused death in the SUDC. I want to touch real quickly on a couple of things. One, the authors of the Gould article believed all those seizures were febrile seizures. Fever was observed before the child's last sleep period in only two cases. But the implication of the authors is that these seizures are believed to be febrile seizures because fever is what triggers seizures in children this age. If they don't have epilepsy, something triggers seizures. Last part, all the children in Gould, the authors said they couldn't have said there was a seizure in the absence of the videotape. That's the problem here. Unwitnessed seizures cause SUDC, some cases of SUDC. And Gould is the first time those seizures have been observed. And those seizures were observed in the context of also causing death through the respiratory suppression, seeing, and sudden unexplained death in epilepsy. Thank you for your time. Okay, thank you. I think both counsel cases submitted.